UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                      :

RASPBERRY HOLDINGS LLC,             :

                      :

              Plaintiff,        :

                      :         24-cv-1529 (LJL)

      -v-                 :

                      :      <u>OPINION AND ORDER</u>

NEXTBANK INTERNATIONAL INC, NEXTPLAY  :

TECHNOLOGIES INC., ABC COMPANIES 1-10,  :

JOHN DOES 1-10,              :

              Defendants.    X

---------------------------------------------------------------------

LEWIS J. LIMAN, United States District Judge:

      Defendants NextBank International, Inc. ("NextBank") and NextPlay Technologies Inc.,

("NextPlay," and, together with NextBank, "Defendants") move, pursuant to Federal Rule of

Civil Procedure 12(b)(2) and (6), to dismiss the complaint ("Complaint") of Plaintiff Raspberry

Holdings, Inc. ("Raspberry Holdings" or "Plaintiff").  Dkt. No. 4.

      For the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

      For purposes of the motion to dismiss for failure to state a claim pursuant to

Rule 12(b)(6), the Court accepts as true the well-pleaded allegations of Plaintiff's Complaint.

The Court also relies on the contract between the parties, which is properly considered as a

written instrument attached to Plaintiff's complaint.  *See* Fed. R. Civ. P. 10(c); *Smith v. Hogan*,

794 F.3d 249, 254 (2d Cir. 2015).

      For the purposes of Defendants' motion to dismiss for lack of personal jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court is not limited to the SAC's well-

pleaded allegations, but may also consider any affidavits, declarations, or exhibits submitted by

the parties.  *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015), *aff'd*,

882 F.3d 333 (2d Cir. 2018).

## I.  Allegations of the Complaint

Raspberry Holdings is a Delaware LLC with a principal place of business in New Jersey.

Dkt. No. 1-1 ¶ 1.[1]  It provides funding for short term and fix/flip commercial and non-owner-

occupied residential mortgage loans.  *Id.*

NextPlay is a technology solutions company offering gaming, advertising, crypto-

banking, connected TV, and travel booking services.  *Id.* ¶ 3.  It has a corporate address in

Florida.  *Id.*[2]

NextBank is an international financial entity operating under the laws of Puerto Rico with

a principal place of business in Puerto Rico.  *Id.* ¶ 2.  It provides concierge banking services and

lending products to entrepreneurs and companies.  *Id.*  NextBank is a wholly-owned subsidiary

of NextPlay.  *Id.*

On or about October 3, 2022, Raspberry Holdings and NextBank entered into a Mortgage

Warehouse Security Agreement (the "Agreement").  *Id.* ¶ 8.  The Agreement identifies

Raspberry Holdings as the "Borrower" and NextBank as the "Lender."  Dkt. No. 5-1 at 1.  It

states that "the Borrower desires to borrow funds to make certain short term and fix/flip

commercial and non-owner occupied residential mortgage loans," and "the Lender has agreed to

establish a revolving line of credit in favor of the Borrower (the 'Facility') to be secured by such

mortgage loans and related collateral."  *Id.*

---

[1] Although the Complaint does not allege the citizenship of the members of the LLC, Raspberry Holdings has separately certified that its members are citizens of New Jersey.  Dkt. No. 7.
[2] Although the Complaint does not state the location of NextPlay's incorporation, NextPlay provided evidence in connection with its notice of removal that NextPlay is a Nevada corporation.  Dkt. No. 1 ¶ 5; Dkt. No. 1-3.

Specifically, Section 1.2 of the Agreement provides that subject to the terms of the Agreement, NextBank will, "from time to time, in its reasonable discretion, advance to the Borrower funds (each, an 'Advance')" subject to certain terms and conditions. *Id.* § 1.2; Dkt. No. 1-1 ¶ 11. A terms letter incorporated by reference into the Agreement (the "Terms Letter") states that the facility amount will be $100 million, with $30 million "to be advanced promptly on execution of the Agreement, within approximately two weeks," and the remaining $70 million "to be advanced thereafter." Dkt. No. 5-1 at 35.

The Agreement obligates Raspberry Holdings to repay the advances. *Id.* ¶ 12. This obligation is evidenced by an attached note executed by Raspberry Holdings on the same day as the Agreement and payable in full to the Lender on the maturity date. *Id.* ¶ 12; Dkt. No. 5-1 at 31.[3] The note states that on event of default or on October 1, 2025, Raspberry Holdings will pay the Lender the lesser of 1) the principal sum of one hundred million dollars and 2) the aggregate outstanding principal balances of the Advances made by the Lender under the Agreement. Dkt. No 5-1 at 30. The Agreement also provides that Raspberry Holdings will grant a continuing security interest to NextBank in each mortgage loan pledged to NextBank under the terms of the Agreement. *Id.* ¶ 13. The Terms Letter states that "Depository Account/Collateral Security" is "a) $20 million in the form of a one-year certificate of deposit bearing interest at the rate of 3.25% per annum and b) the free and clear properties listed on, and more particularly described in, Exhibit A." Dkt. No. 5-1 at 36.[4] Exhibit A describes three parcels of land in Florida. *Id.* at 40.

---

[3] ECF pagination.
[4] ECF pagination.

Sections 5.1 through 5.5 of the Agreement list conditions precedent to the making of the first Advance, including provision of a secretary's certificate noting those officers authorized to act on behalf of the Borrower, provision of certified copies of all documents executed by the Borrower in connection with the Agreement, and provision of a guaranty executed by those principals holding a 10% or greater interest in the Borrower.  *Id.* §§ 5.1–5.5.

Section 7.7 of the Agreement states that

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO THE CONFLICT OF LAW PRINCIPLES THEREOF AND THE PARTIES HERETO HEREBY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE STATE COURTS OF, AND FEDERAL COURTS LOCATED IN, NEW YORK AND BORROWER AGREES TO THE LAYING OF VENUE IN THE COUNTY OF NEW YORK, STATE OF NEW YORK.

Dkt. No. 1-1 ¶ 6.

Plaintiff performed all of its obligations under the Agreement, including posting the requisite collateral and perfecting the security interests required by the Agreement.  *Id.* ¶¶ 19, 25.  Defendants did not provide funding under the Agreement.  *Id.* ¶ 20.  NextPlay did not guarantee or fund NextBank so that it could fund the agreement.  *Id.* ¶ 18.  Defendants returned the collateral posted by Plaintiff.  *Id.* ¶ 21.  Plaintiff incurred damages consisting of counsel fees, internal costs and expenditures, lost revenue, and collection fees.  *Id.* ¶ 22.

The parties held three meetings before forming the Agreement.  Dkt. No. 1-1 ¶ 16.  Two meetings were held at Raspberry Holdings' offices in New Jersey, and one was held at the NextBank offices in New York.  *Id.*  Defendants stated on numerous occasions that Defendants had the capacity to fund the lending contemplated by the Agreement.  *Id.* ¶ 15.  Defendants represented that the Deposit Account Control Agreement was guaranteed by Signature Bank.  *Id.*  However, Signature Bank did not guarantee the Deposit Account Control Agreement.  *Id.* ¶ 17.

Signature Bank collapsed on March 12, 2023, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as the bank's receiver. *Id.* n.1.  The actions of the FDIC as receiver have "been expressed as a rationale for NextBank's nonperformance" under the Agreement. *Id.* ¶ 5.

## II.    Additional Facts Supporting Personal Jurisdiction

In support of its jurisdictional allegations against NextPlay, Plaintiff submitted NextPlay's Securities and Exchange Commission ("SEC") Form 10-Q for the quarter ending November 30, 2022, and NextPlay's SEC Form 8-K dated January 18, 2024.  Dkt. No. 12 ¶¶ 2–3.  These forms discuss NextBank as being "in the Finance and Technology Division" of NextPlay.  Dkt. No. 12-1 at 6.  They state that NextPlay has "two operating segments" with separate financial information, and that NextBank is one of five entities within the "NextFinTech" segment. *Id.* at 17, 51.  The documents state that "the Company [NextPlay] had loans receivable of $22.2 million," referring to loans receivable of NextBank. *Id.* at 17–18.

## PROCEDURAL HISTORY

Plaintiff's complaint was originally filed in the Supreme Court of New York, New York County, on January 30, 2024.  Dkt. No. 1 ¶ 1.  The Complaint alleges breach of contract, fraudulent and negligent misrepresentation and promissory estoppel, unjust enrichment, and breach of the Uniform Commercial Code ("UCC"), and states that Plaintiff had incurred damages "in excess of $195,000."  Dkt. No. 1-1 ¶¶ 22, 23–41.  On February 28, 2024, Defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1331 and 1332. *Id.*[5]

---

[5] The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332.  The amount in controversy is greater than $75,000, and there is complete diversity of citizenship.  Raspberry Holdings is a citizen of New Jersey, Dkt. No. 1-1 ¶ 1, Dkt. No. 7, NextPlay is a citizen of Nevada and Florida, Dkt. No. 1-1 ¶ 3; Dkt. No. 1-3, and NextBank is a citizen of Puerto Rico, Dkt. No. 1-1 ¶ 2.

On March 13, 2024, Defendants filed a motion to dismiss and a memorandum of law in support of the motion, along with five accompanying exhibits.  Dkt. Nos. 4–5.[6]  On April 18, 2024, Plaintiff filed a memorandum of law in opposition to the motion to dismiss and a declaration of counsel in support with three exhibits.  Dkt. Nos. 11–12.  Defendants did not file a reply.

## LEGAL STANDARD

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'"  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  Where, as here, jurisdictional discovery has not been conducted, the plaintiff need only make a *prima facie* showing by his pleadings and affidavits that jurisdiction is proper.  *Id.* at 85; *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727–28 (2d Cir. 2012).  "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."  *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir.

---

[6] Defendants attempted to file the motion on March 5, 2024, but it was rejected by the clerk of court due to filing errors.  Dkt. No. 3.

1993) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam) (citation omitted)).  The court must "construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in [its] favor." *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 131 (2d Cir. 2022) (quoting *DiStefano*, 286 F.3d at 84).

Even so, the *prima facie* showing required to establish personal jurisdiction prior to an evidentiary hearing still "must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Dorchester Fin. Sec.*, 722 F.3d at 85.  While the Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs," *id.*, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quotations omitted).  "[C]onclusory allegations are not enough to establish personal jurisdiction."  *Gmurzynska v. Hutton,* 257 F. Supp. 2d 621, 625 (S.D.N.Y.2003) (quoting *Marczeski v. Kamba*, 2001 WL 237204, at *1 (D. Conn. Feb. 23, 2021)), *aff'd,* 355 F.3d 206 (2d Cir. 2004); *accord Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 496–97 (S.D.N.Y. 2016).

On a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff.  *See York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002), *cert. denied*, 537 U.S. 1089 (2002).  This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  A complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive

dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). The ultimate question is whether "[a] claim has facial plausibility, [i.e.] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556.

## DISCUSSION

Defendants argue that the Complaint should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 5. Defendants' challenge to personal jurisdiction must be addressed first. *See N. Fork Partners Inv. Holdings, LLC v. Bracken*, 2020 WL 2521448, at *2 (S.D.N.Y. May 18, 2020) ("'A court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question' and must dismiss the action against any defendant over whom it lacks personal jurisdiction." (quoting *Lugones v. Pete & Gerry's Organic, LLC*, 2020 WL 871521, at *2 (S.D.N.Y. Feb. 21, 2020))).

## I.    Personal Jurisdiction

"In diversity cases, the issue of personal jurisdiction is governed by the law of the forum state." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). If the law of the forum state permits personal jurisdiction, a court must also "consider whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair*, 462 F.3d at 103.  "'Where an agreement contains a valid and enforceable forum selection clause . . . it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process' as to the parties bound by that agreement." *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.,* 2021 WL 918556, at *6 (S.D.N.Y. Mar. 10, 2021) (quoting *Export–Import Bank of U.S. v. Hi–Films S.A. de C.V.*, 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010).  "Rather, assenting to '[a]n enforceable forum selection clause amounts to consent to personal jurisdiction.'" *Id.* (quoting *Farrell Lines Inc. v. Columbus Cello–Poly Corp.*, 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997)).

"Absent consent, the Court might have general or specific jurisdiction over Defendants under N.Y. C.P.L.R. §§ 301 or 302, respectively." *Everything Yogurt Brands, LLC v. Bianco*, 2024 WL 3497757, at *3 (S.D.N.Y. July 22, 2024).  New York C.P.L.R. 301, which speaks to general jurisdiction, requires the corporation to have "engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488, 490 (N.Y. 1990) (quoting *Laufer v. Ostrow*, 434 N.E.2d 692, 694 (N.Y. 1982)); *see Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016).  New York C.P.L.R. 302 sets out the requirements for specific jurisdiction, providing that:

> [A] court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . .

N.Y. C.P.L.R. 302(a).

Defendants do not dispute that this Court has personal jurisdiction over NextBank. NextBank is a signatory to the Agreement, which states that "THE PARTIES HERETO SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE STATE COURTS OF, AND FEDERAL COURTS LOCATED IN, NEW YORK."  Dkt. No. 5-1 § 7.7.  There is no question that this forum-selection clause "was reasonably communicated to the parties."  *D.H. Blair*, 462 F.3d at 103.  The clause is in capital letters and is "clear and unambiguous."  *HSM Holdings*, 2021 WL 918556, at *7.  The clause is also mandatory, stating that the parties agree to the "EXCLUSIVE" jurisdiction of the New York courts.  *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language.").  Defendants have not contested the applicability of the forum selection clause to Plaintiff's claims, nor have they suggested that enforcement of the clause as to NextBank "would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (quoting *M/S Bremen v. Zapata*

*Off–Shore Co.*, 407 U.S. 1, 15 (1972)).  The forum selection clause thus confers personal

jurisdiction over NextBank.[7]

---

[7] In addition, Plaintiff has made a sufficient showing to support specific personal jurisdiction over NextBank under N.Y. C.P.L.R. 302(a)(1), which permits a court to "exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 362 (S.D.N.Y. 2020), *adhered to in part on reconsideration*, 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020).  For jurisdiction to exist under this provision, "two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 338  (S.D.N.Y. 2016) (quoting *Barrett v. Tema Dev. (1988), Inc.*, 251 Fed.Appx. 698, 700 (2d Cir. 2007)).  "New York courts define 'transact[ing] business' as purposeful activity—'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967)).  New York courts have "made clear that 'the nature and purpose of a solitary business meeting conducted for a single day in New York may supply the minimum contacts necessary to subject a nonresident participant to the jurisdiction of our courts.'" *State v. Vayu, Inc.*, 206 N.E.3d 1236, 1241 (N.Y. 2023) (quoting *Presidential Realty Corp. v. Michael Sq. W., Ltd.*, 376 N.E.2d 198 (N.Y. 1978)).

Here, Plaintiff alleges that NextBank has offices in New York and hosted Raspberry Holdings for meetings at those offices. Dkt. No. 1-1 ¶ 16.  The choice to have offices in New York and to use them for business meetings constitutes purposeful availment of the privilege of conducting activities within New York.  *See Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 850 N.E.2d 1140, 1143 (N.Y. 2006) (finding personal jurisdiction over company that "entered New York to transact business here by knowingly initiating and pursuing a negotiation . . . in New York"); *cf. Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98 (2d Cir. 2000) (noting that the presence of "an office in the state" may go so far as to support *general* personal jurisdiction).  Plaintiff's claims for breach of contract arise out of that business activity, because, drawing all reasonable inferences in favor of Plaintiff, the meeting in New York involved negotiation of the contract and NextPlay's making of the representations described in the Complaint.  *See* Dkt. No. 1-1 ¶ 15; *Liu Jo S.P.A. v. Jenner*, 630 F. Supp. 3d 501, 512 (S.D.N.Y. 2022) ("To determine that the agreements were not at least partially negotiated and executed in New York is to draw inferences in defendants' favor."); *Wilson v. Dantas*, 9 N.Y.S.3d 187, 190 (1st Dep't 2015) (same), *aff'd*, 80 N.E.3d 1032 (N.Y. 2017).  This is sufficient to confer personal jurisdiction.  *See Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*, 589 F. Supp. 3d 401, 413 (S.D.N.Y. 2022) ("New-York based contractual negotiations can constitute transacting business in New York as long as the negotiations relate to the same agreement that is the subject of the lawsuit."); *Catsimatidis v. Innovative Travel Grp., Inc.*, 650 F. Supp. 748 (S.D.N.Y. 1986) ("Any contract negotiations evidencing a purposeful invocation of the laws of the forum state are transactions of business for purposes of New York's long arm statute.").

Defendants do dispute that this Court has personal jurisdiction over NextPlay. NextPlay is not a signatory to the Agreement, and the Complaint contains no allegations of conduct by NextPlay in New York independent of the conduct of NextBank.[8]  Rather, Plaintiff contends that personal jurisdiction exists over NextPlay because NextBank is "a wholly owned subsidiary of, and is dominated by, NextPlay." Dkt. No. 11 at 9. Defendants argue that there is no basis to exercise jurisdiction over NextPlay as the parent company of NextBank. Dkt. No. 5 at 7–9.

"[T]he presence of the subsidiary alone does not establish the parent's presence in the state." *Jazini v. Nissan Motor Co*., 148 F.3d 181, 184 (2d Cir. 1998). "For New York courts to have personal jurisdiction in that situation, the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent." *Id.*; *see Koehler v. Bank of Bermuda Ltd*., 101 F.3d 863, 865 (2d Cir. 1996); *NovelAire Techs., L.L.C. v. Munters AB*, 2013 WL 6182938, at *5 (S.D.N.Y. Nov. 21, 2013).

When jurisdiction is based on an agency relationship, the agent must have acted "for the benefit of, with the knowledge and consent of, or under some control by, the nonresident principal," when taking the actions which establish personal jurisdiction. *Miami Prods. & Chem. Co. v. Olin Corp*., 449 F. Supp. 3d 136, 181 (W.D.N.Y. 2020) (quoting *Charles Schwab Corp. v. Bank of Am. Corp*., 883 F.3d 68, 85 (2d Cir. 2018)); *see Ingenito v. Riri USA, Inc*., 89 F. Supp. 3d 462, 476–77 (E.D.N.Y. 2015) ("Personal jurisdiction over a parent corporation whose

---

[8] The Complaint contains certain allegations that "Defendants" made representations or took actions. Dkt. No. 1-1 ¶¶ 15, 19, 21. Such allegations will not suffice to establish personal jurisdiction. "For purposes of alleging that there is personal jurisdiction . . . plaintiffs may not refer to affiliated defendants by a conclusory collective name unless plaintiffs adequately allege that the conduct of one affiliate is attributable to another." *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2017 WL 3600425, at *6 (S.D.N.Y. Aug. 18, 2017). Defendants must either point to particular conduct of NextPlay establishing personal jurisdiction in New York or show that the conduct of NextBank which establishes such jurisdiction is attributable to NextPlay.

subsidiary has transacted business in New York exists when the nondomiciliary parent corporation knew of and consented to the acts of its in-state subsidiary that gave rise to the cause of action, and 'exercised some control over [the subsidiary] in the matter.'" (quoting *EFCO Corp. v. Nortek, Inc.*, 2000 WL 254047, at *1 (2d Cir. 2000) (unpublished table decision))). Plaintiff has not alleged any facts or provided any evidence suggesting that NextPlay controlled the negotiation, signing, or performance of the contract. Plaintiff has not alleged that NextPlay was involved in this transaction at all, aside from the fact that NextBank is a wholly owned subsidiary of NextPlay. Therefore, Plaintiff does not establish that NextPlay can be subject to personal jurisdiction on the basis that NextBank was acting as NextPlay's agent when signing or negotiating the contract. *See NovelAire Techs.*, 2013 WL 6182938, at *5 ("[T]he subsidiary's actions cannot be attributed to the parent absent the showing of control that is so utterly lacking here."); *Miami Prods. & Chem. Co.*, 449 F. Supp. 3d at 181.

Plaintiff appears to rely on a more expansive alter ego or "mere department" theory. The "mere department" theory of jurisdiction is premised on the idea that when the "activities of the parent show a disregard for the separate corporate existence of the subsidiary," the actions of the subsidiary can, as a general matter, be imputed to the parent for jurisdictional purposes. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). The justifications for disregarding the corporate form in this context are similar to the justifications for piercing the corporate veil in other areas of the law. *See Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*, 684 F. Supp. 3d 170, 187 (S.D.N.Y. 2023) ("A foreign corporation, in other words, cannot use a subsidiary that serves no other purpose than as a shield against legal liability to block federal jurisdiction."); *Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 55 n.1 (2d Cir. 2014); *Aspen Speciality Ins. Co. v. RCI Hosp.*

*Holdings, Inc*., 2023 WL 4080550, at *4–5 (S.D.N.Y. June 20, 2023); *see also Miramax Film Corp. v. Abraham*, 2003 WL 22832384, at *7 (S.D.N.Y. Nov. 25, 2003) (noting that "[t]he standard for piercing the corporate veil for liability purposes is not . . . the same standard to be used when piercing for jurisdictional purposes," as "the corporate veil may be pierced to impute jurisdiction even without a showing that the shell was used to perpetrate a fraud").  "To determine whether a subsidiary is a "mere department" of a parent, courts consider the following factors: (1) common ownership of the parent and subsidiary; (2) financial dependence of the subsidiary on the parent corporation; (3) the degree to which the parent interferes with the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and (4) the degree of control that the parent exercises over the marketing and operational policies of the subsidiary."  *Williamson ex rel. At Home Bondholders' Liquidating Tr. v. Verizon Commc'ns Inc*., 2013 WL 227691, at *1 (S.D.N.Y. Jan. 22, 2013); *Wolberg v. IAI N. Am., Inc*., 77 N.Y.S.3d 348, 350 (1st Dep't 2018).  The first factor, common ownership, is "essential" but not sufficient.  *Volkswagenwerk Aktiengesellschaft*, 751 F.2d at 120; *see Erick Van Egeraat Associated Architects B.V. v. NBBJ LLC*, 2009 WL 1209020, at *2 (S.D.N.Y. Apr. 29, 2009) ("[I]t is not enough for the entities in question to be commonly owned.").  The analysis "will necessarily depend on the attendant facts," and, as with the more specific agency theory, the primary focus is on "the degree of control" exercised by the parent corporation over the subsidiary.  *Goel v. Ramachandran*, 975 N.Y.S.2d 428, 434 (1st Dep't 2013).

Plaintiff has not shown that "[t]he control over the subsidiary's activities . . . [is] so complete that the subsidiary is, in fact, merely a department of the parent," or that "there is realistically no basis for distinguishing between them" for jurisdictional purposes.  *Id.* (quoting *Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany*, 278 N.E.2d 895, 897 (N.Y. 1972), and

then quoting *Pub. Adm'r of N.Y. Cnty. v. Royal Bank of Can.*, 224 N.E.2d 877, 879 (N.Y. 1967)).

Plaintiff has shown the essential first factor, common ownership. Dkt. No. 1-1 ¶ 2. However,

Plaintiff has not alleged or shown that NextBank is financially dependent on NextPlay, that

NextPlay controls the selection or assignment of NextBank's personnel or fails to observe

corporate formalities, or that NextPlay controls NextBank's marketing and operations.

NextBank, a concierge banking company, facially engages in a different line of business than

NextPlay, a technology solutions company, and the two companies have separate principal

offices. Dkt. No. 1-1 ¶¶ 1–3. Plaintiff relies on SEC forms showing that NextBank is "in the

Finance and Technology Division" of NextPlay, one of two "operating segments" of NextPlay,

and that NextPlay discusses NextBank's loans as attributable to NextPlay. Dkt. No. 12-1 at 6,

17–18, 51. This does not show that NextBank is a mere department indistinguishable from

NextPlay, as opposed to simply a wholly-owned subsidiary. It is not unusual for a subsidiary to

have financial and accounting ties to its parent company, or to be functionally organized as part

of a division of a parent company. Such facts suggest some level of coordination and that, at

least at a high level of generality, the subsidiary is charged with carrying out some of the

business of the combined corporation. However, a significantly greater showing of control, and

not just coordination, is needed to justify attributing the actions of the subsidiary to the parent for

purposes of personal jurisdiction. *See Goel*, 975 N.Y.S.2d at 434 (holding that a "close parent-

subsidiary" connection, demonstrated by significantly more evidence than established here, did

not confer jurisdiction); *Jazini*, 148 F.3d at 185 (holding that mention of subsidiary as part of

company's overall "global operations," and some overlap of directors and officers, did not confer

jurisdiction); *Saraceno v. S.C. Johnson & Son, Inc*., 83 F.R.D. 65, 68–69 (S.D.N.Y. 1979)

(holding that significant corporate interdependence in approving major expenditures, sharing

board members, and issuing consolidated financial statements did not confer jurisdiction);

*Bellomo v. Penn. Life Co.*, 488 F.Supp. 744, 745 (S.D.N.Y. 1980).

The Court may not exercise personal jurisdiction over NextPlay, and NextPlay must be dismissed from this case.

## II.    Plaintiff's Claims

Plaintiff's Complaint alleges four causes of action: 1) breach of contract, 2) fraudulent and negligent misrepresentation and promissory estoppel, 3) unjust enrichment, and 4) breach of the Uniform Commercial Code.  Dkt. No. 1-1.  Defendants argue that the Complaint fails to plead Plaintiff's compliance with conditions precedent identified in the Agreement, *id.* at 11, that Plaintiff has not pled a violation of the UCC, *id.* at 18–19, and that Plaintiff's remaining tort and quasi-contract claims are not cognizable independent of its claim for breach of contract, *id.* at 12–17.  Plaintiff argues that it has sufficiently pled its breach of contract claim, that its tort and unjust enrichment claims are meaningfully separable from its breach of contract claim, and that it has pled a claim for refusal to honor a letter of credit as defined in the UCC.  *Id.* at 19–22.

### A.    Breach of Contract

The elements of breach of contract under New York law are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Spencer-Smith v. Ehrlich*, 347 F.R.D. 606, 616 (S.D.N.Y. 2024) (quoting *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011)).  The only element disputed by NextBank is whether Plaintiff properly alleged adequate performance of the contract, specifically whether Plaintiff properly alleged that it satisfied the conditions precedent in the Agreement.  Dkt. No. 5 at 11–12.

A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises."

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995)

(citation omitted).  Federal Rule of Civil Procedure 9 states that:

> In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.  But when denying that a condition precedent has occurred or been performed, a party must do so with particularity.

Fed. R. Civ. P. 9(c).

As this Court has previously held, Rule 9 does not create an additional requirement that Plaintiff must plead conditions precedent beyond what is required to plead "adequate performance of the contract" under state law.  *Spencer-Smith*, 347 F.R.D. at 618–20.[9]  Rather, the proper view is that the elements a Plaintiff must plead are determined by state law, and the manner of pleading is determined by the Federal Rules.  *Id.* at 619.  Under New York law, "where the plaintiff must have satisfied a condition precedent before any duty of the defendant to perform arises, the plaintiff must plead satisfaction of the condition precedent because otherwise the plaintiff will have failed to allege any breach by defendant, which is an element of the claim" for breach of contract.  *Id.* at 620 (collecting cases).[10]  The manner in which such a condition precedent must be pled in federal court, as stated by Rule 9(c), is "generally."  Fed. R. Civ. P. 9(c); *see Mendez*, 840 F. Supp. 2d at 648 ("[I]t is clear that even where courts require

---

[9] Some courts have held or suggested that Rule 9 obligates a plaintiff to plead the performance of conditions precedent whenever a contract contains them.  *See, e.g.*, *Patel v. Baluchi's Indian Rest.*, 2009 WL 2358620, at *8 (S.D.N.Y. July 30, 2009) (requiring Plaintiff to plead conditions precedent).  However, other courts have disavowed this view.  *See, e.g.*, *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 648 (E.D.N.Y. 2012) ("The language of Rules 8(a)(2) and 9(c) does not expressly require that the performance or occurrence of conditions precedent be pleaded by a claimant.").

[10] Pleading of a condition is not required under state law when that condition need not be satisfied before the defendant has a duty to perform under the contract, because the plaintiff may adequately allege performance and breach without mentioning the condition.  *Id.* at 621.  A condition of this type, such as a notice-and-cure provision which becomes relevant after a party is in breach, may be raised by the defendant as an affirmative defense.  *Id.*

allegations in the complaint with regard to the satisfaction of conditions precedent, courts have consistently accepted only general averments of their fulfillment.").

Here, Plaintiff alleges that NextBank breached the Agreement by failing to provide funding.  Dkt. No. 1-1 ¶ 20.  According to the Terms Letter, NextBank was to provide $30 million "to be advanced promptly on execution of the Agreement, within approximately two weeks," and the remaining $70 million "to be advanced thereafter."  Dkt. No. 5-1 at 35.

NextBank argues that the contract contained numerous conditions precedent to its obligation to provide such funding, including that required guarantors provide NetBank with a written guaranty and that Raspberry provide proof of $1,000,000 of insurance coverage.  Dkt. No. 5 at 10; *see* Dkt. No. 5-1 §§ 5.1–5.5; *id.* at 35.[11]  Assuming that these were conditions precedent to NextBank's obligation to provide any funding under the Agreement,[12] Plaintiff has sufficiently pled that they were satisfied.  Plaintiff alleges that it "posted the requisite collateral and perfected the security interests therein," and that it "performed all its obligations under the Agreement, included but not limited to, posting the required collateral."  Dkt. No. 1-1 ¶¶ 19, 25. Plaintiff specifically alleges that it performed under the contract by posting the required collateral, and its general allegations as to the remaining conditions are sufficient under Rule

---

[11] ECF pagination.

[12] These conditions precedent clearly apply to NextBank's obligation to provide an "Advance" under Section 1.2 of the Agreement.  *See* Dkt. No. 5-1 at 9 (stating that conditions precedent apply "prior to the making of the first Advance hereunder").  It is less clear whether the $30 million to be advanced "promptly upon execution" under the Terms Letter qualifies as an "Advance" as defined in Section 1.2 of the body of the contract, which generally speaks to discretionary advances.  If NextBank was required to provide this initial advance upon execution of the contract independent of the satisfaction of the conditions precedent, Plaintiff would not be required to plead the satisfaction of the conditions in order to adequately allege breach.  It would be enough to plead that the contract was executed and that NextBank did not advance the initial funding.

9(c).  *See Superior Site Work, Inc. v. Nasdi, LLC*, 2016 WL 526238, at *6 (E.D.N.Y. Feb. 9, 2016) ("[M]ost district courts have interpreted the rule to require, at most, a general averment to the satisfaction of any conditions precedent." (quotation marks omitted)); *In re Residential Cap., LLC*, 524 B.R. 563, 584 (Bankr. S.D.N.Y. 2015) ("Courts in the Second Circuit are largely in agreement that 'a general allegation that all conditions precedent have been met . . . is sufficient to satisfy Rule 9(c).'" (quoting *Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*, 2013 WL 3835191, at *3 (S.D.N.Y. July 25, 2013))).  Plaintiff is not required to specifically plead each provision of the contract, running down a checklist of secretary's certificates, certified copies of corporate actions, related documents provided to the Lender, UCC financing statements, and "such other forms and documentation as may be usual and customary in the mortgage origination business or supplied by the Lender" that it has provided.  Dkt. No. 5-1 §§ 5.1–5.6.  Such a formalist exercise is not required to satisfy Rule 9(c), nor is it necessary to survive a motion to dismiss under Rule 12(b)(6).  *See Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 210 (S.D.N.Y. 2024) (noting that a "Court must apply common sense rather than rigid formalism" in determining whether Plaintiff has stated a claim (citation omitted)); *Iqbal*, 556 U.S. at 678 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era.").  Defendants are free to raise Plaintiff's failure to satisfy a particular condition as an affirmative defense, but Plaintiff need not anticipate this in its pleading.  *See Spencer-Smith*, 347 F.R.D. at 621.

The motion to dismiss is denied as to Plaintiff's claim for breach of contract.

### B.    Fraudulent and Negligent Misrepresentation and Promissory Estoppel

Plaintiff's second claim, styled as "Fraudulent and Negligent Misrepresentation; Promissory Estoppel," is that Defendants "induced Plaintiff to enter the Agreement, with full knowledge that Defendants did not have the funds to adequately provide funding to Plaintiff."

Dkt. No. 1-1 ¶ 30.  Plaintiff also alleges that Defendants "had no intention and/or ability to actually provide funding," and knew that they "were undercapitalized and . . . would be unable to meet their contractual obligations.  *Id.* ¶¶ 32–33.  Plaintiff specifically relies on the allegation that:

> [O]n numerous occasions the Defendants, orally and in writing, represented to Plaintiff with the intent that Plaintiff rely on said representations, and on which the Plaintiff did reasonably rely, that Defendants had the capacity and ability to fund the lending contemplated by the Agreement. Defendants represented, inter alia, that the Deposit Account Control Agreement ("DACA") was guaranteed by Signature Bank.

Dkt. No. 1-1 ¶ 15.  Defendants argue that these allegations are not sufficiently specific to plead fraud and cannot be brought independently of Plaintiff's breach of contract claim.  Dkt. No. 5 at 12–15.

"Proof of fraud under New York law requires a showing that '(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'"  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 209 (2d Cir. 2018) (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006)).  In federal court, a "fraudulent misrepresentation claim must . . . satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."  *Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 174 (S.D.N.Y. 2023).  "That ordinarily requires a complaint alleging fraud to '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (quoting *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 26 (2d Cir. 2016)).  "This rule is intended to provide defendants with fair notice of the plaintiff's claim, to

discourage plaintiffs from making a cavalier decision to accuse a defendant of fraud, and to protect defendants from strike suits." *S.E.C. v. One or More Unknown Traders in Sec. of Onyx Pharms., Inc*., 2014 WL 5026153, at *3 (S.D.N.Y. Sept. 29, 2014). Although a defendant's state of mind may be "averred generally," "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank*, N.A., 459 F.3d 273, 290 (2d Cir. 2006). "In this Circuit, a complaint may establish the requisite 'strong inference' of fraudulent intent either (a) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (b) by alleging facts to show that defendants had both motive and opportunity to commit fraud." *Stevelman v. Alias Rsch. Inc.*, 174 F.3d 79, 84 (2d Cir. 1999).

Plaintiff's allegations of fraud do not satisfy this standard. The fraudulent statements identified by Plaintiff are that "Defendants had the capacity and ability to fund the lending contemplated by the Agreement" and that "Defendants represented, inter alia, that the Deposit Account Control Agreement ('DACA') was guaranteed by Signature Bank." Dkt. No. 1-1 ¶ 15. Plaintiff does not specify who made these statements or when, alleging merely that they were made by "Defendants," "on numerous occasions." *Id.*; *see DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."). It is not clear from the pleadings that the representations were made before the contract was signed, such that Plaintiffs could have been induced by them to sign the contract. Plaintiff also does not allege facts "that give rise to a strong inference" that the statements were actually fraudulent or that Defendants were aware of their falsity. *Lerner*, 459 F.3d at 290. Plaintiff simply alleges "upon information and belief" that Signature Bank did not guarantee the Deposit Account Control Agreement and that Defendants "knew, or should

have known, that they would be unable to meet their contractual obligations" to provide funding. Dkt. No. 1-1 ¶¶ 17, 33. These "generalized allegations" fall far short of the Rule 9(b) standard. *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 897 (E.D.N.Y. 2018), *on reconsideration*, 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019); *see Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129–30 (2d Cir. 1994) (holding "conclusory allegations" that defendants knew and concealed certain facts insufficient to satisfy Rule 9(b)).

Defendants are also correct that aspects of Plaintiff's fraudulent misrepresentation claim must be dismissed as inseparable from Plaintiff's contract claim. Under New York law, "misrepresentations made to induce a party to enter a contract are not actionable as fraud . . . unless they are 'collateral' to the contract induced." *Spinelli*, 903 F.3d at 209 (quoting *Wall*, 471 F.3d at 415–16). A "collateral" misrepresentation may involve misrepresentation of a material fact which is inducement for the contract or a promise to take some future action which is collateral to the contract. *Wall*, 471 F.3d at 416. "Where a plaintiff alleges, by contrast, that the defendant simply misrepresented its intent to perform under a contract, no separate claim for fraud will lie, and the plaintiff must instead bring an action for breach of contract." *Spinelli*, 903 F.3d at 209.

Plaintiff's fraudulent misrepresentation claim is in part that Defendants "induced Plaintiff to post collateral and undertake legal services pursuant to the Agreement . . . when Defendants had no intention and/or ability to actually provide funding." Dkt. No. 1-1 ¶ 32. The claim that Defendants promised to perform but had "no intention . . . to provide funding" is on its face a claim that "the defendant[s] simply misrepresented [their] intent to perform under the contract," which may not be brought independently from Plaintiff's breach of contract claim. *Spinelli*, 903 F.3d at 209. Similarly, the allegation that Defendants falsely stated they "had the capacity and

ability to fund the lending contemplated by the Agreement" is inseparable from Plaintiff's breach of contract claim as alleged here. Dkt. No. 1-1 ¶ 15. False statements about a company entering into a contract may in some cases be collateral to a claim on the contract itself. *See WIT Holding Corp. v. Klein*, 724 N.Y.S.2d 66, 68 (2d Dep't 2001) (upholding fraudulent inducement claim based on allegations that company representative "stated that FPFG was in full compliance with regulatory requirements, when in fact, it needed an infusion of cash to meet them"). However, Plaintiffs here simply make a conclusory allegation that Defendants "knew, or should have known, they would be unable to . . . provide funding," based solely on the fact that they did not provide it. Dkt. No. 1-1 ¶ 33. In short, Plaintiff alleges that Defendants should have known that they would not be able to honor their contract. This is merely "a means of restating what is, in substance, a claim for breach of contract," as a fraud claim, with fraud assumed in hindsight because of the breach. *Wall*, 471 F.3d at 416; *see N.Y.U. v. Cont'l Ins. Co*., 662 N.E.2d 763, 769 (N.Y. 1995) ("[T]hose allegations merely evidence plaintiff's dissatisfaction with defendants' performance of the contract obligations.").

However, Plaintiff's claim is also based on Defendants' representation of at least one fact collateral to the contract, namely that "the Deposit Account Control Agreement ('DACA') was guaranteed by Signature Bank." Dkt. No. 1-1 ¶ 15. The claim that defendants falsely represented the status of a guarantee is "sufficiently distinct from the breach of contract claim" to be independently pled. *Papa's–June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y.1996); *see WIT Holding*, 724 N.Y.S.2d at 68. The issue is that Plaintiff has not provided particularized allegations regarding this representation that would allow its claim to survive under Rule 9(b).

Plaintiff's claim fares no better if viewed as a claim for negligent misrepresentation or promissory estoppel. Under New York law, the first element of a claim for negligent misrepresentation is that "the defendant had a duty, as a result of a special relationship, to give correct information." *Gallagher v. N.Y.C. Health & Hosps. Corp.*, 2017 WL 4326042, at *7 (S.D.N.Y. Sept. 20, 2017) (quoting *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)), *aff'd*, 733 F. App'x 3 (2d Cir. 2018). "An arm's length business relationship, as existed here, is not generally considered to be the sort of confidential or fiduciary relationship that would support a cause of action for negligent misrepresentation." *Greentech Rsch. LLC v. Wissman*, 961 N.Y.S.2d 406, 407 (1st Dep't 2013); *see Fleet Bank v. Pine Knoll Corp.*, 736 N.Y.S.2d 737, 741 (3d Dep't 2002). NextBank owed no special duty in negotiating an arms-length contract with Plaintiff, and a claim for negligent misrepresentation will not lie.

Promissory estoppel requires "(1) a promise that is sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance." *Condor Funding, LLC v. 176 Broadway Owners Corp.*, 46 N.Y.S.3d 99, 101 (1st Dep't 2017). To the extent Plaintiff's claim is that Defendants promised to perform and did not do so, such claim is clearly precluded by the contract between the parties. *See Pope Contracting, Inc. v. N.Y.C. Hous. Auth.*, 186 N.Y.S.3d 150, 154 (1st Dep't 2023) ("The existence of a contract between the parties precludes claims for promissory estoppel.").

Plaintiff's second cause of action must be dismissed.

## C.    Unjust Enrichment

Plaintiff's claim for unjust enrichment states that "in the alternative, Plaintiff conferred a benefit upon Defendant[13] by posting collateral and expending funds pursuant to the Agreement,"

---

[13] Plaintiff uses the singular "Defendant" in this allegation. It is not clear which Defendant Plaintiff is referring to or whether Plaintiff intended the allegation to cover both defendants.

and "Defendants[] enriched themselves at Plaintiff's expense by . . . converting the promised funds for Defendants' own purposes." Dkt. No. 1-1 ¶¶ 35–38. This claim must be dismissed.

"The theory of unjust enrichment . . . is an obligation the law creates in the *absence of any agreement*." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc*., 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Goldman v. Metropo. Life Ins. Co*., 841 N.E.2d 742, 746 (N.Y. 2005) (emphasis added)). Therefore, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Id.* (quoting *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co*., 516 N.E.2d 190, 193 (N.Y. 1987)). When the validity of a contract is in dispute, a plaintiff may plead a theory of unjust enrichment in the alternative. *See Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 430–31 (S.D.N.Y. 2020). However, when the validity of the contract is not in dispute, the contract controls the issue and an unjust enrichment claim will not lie. *Id.*

The validity of the Agreement is not in dispute, so it controls the obligations of the parties and a claim for unjust enrichment will not lie. Plaintiff argues that "Defendant is disputing whether conditions precedent were performed by Plaintiff," and that if Defendant is successful, Plaintiff could fall back on a theory of quasi-contract. Dkt. No. 11 at 23–24. This is incorrect. Plaintiff's failure to perform a condition precedent would not invalidate the contract. Therefore, the "relationship between the parties" with respect to the transaction will continue to be "defined by the written contract," not by duties imposed under a theory of quasi-contract. *Clark-Fitzpatrick*, 516 N.E.2d at 193. If NextBank is not in breach of the contract, Plaintiff cannot fall back on a quasi-contract claim related to the same subject matter. *See id.* ("[P]laintiff is now limited to recovery of damages on the contract, and may not seek recovery based on an

alleged quasi contract.").  Plaintiff's claim will simply fail, because NextBank will not have breached its duties towards Plaintiff with respect to this transaction.

### D.        Breach of UCC Article 5

Plaintiff's final claim is that the Agreement is "a Letter of Credit under Article 5 of the Uniform Commercial Code," and that due to NextBank's default, Plaintiff is entitled to remedies contained in the UCC.  Dkt. No. 1-1 ¶¶ 40–41.  However, the Agreement simply is not a letter of credit.  "Letters of credit are commercial instruments that provide a seller or lender (the beneficiary) with a guaranteed means of payment from a creditworthy third party (the issuer) in lieu of relying solely on the financial status of a [customer] (the applicant)."  *Milky Whey, Inc. v. HSBC Bank USA, N.A.*, 728 F. Supp. 3d 308, 312 (S.D.N.Y. 2024) (quoting *Nissho Iwai Eur. v. Korea First Bank*, 782 N.E.2d 55, 58 (N.Y. 2002)).  "The customer applies for the letter of credit, specifies the terms of the letter and promises to reimburse the issuer upon honor of the beneficiary's draft."  *Id.* (quoting *Bank of Cochin, Ltd. v. Mfrs. Hanover Tr. Co.*, 612 F. Supp. 1533, 1537 (S.D.N.Y. 1985)).  The issuer, typically a bank, issues a letter that constitutes an "irrevocable promise to pay the seller-beneficiary when the latter presents certain documents." *Alaska Textile Co. v. Chase Manhattan Bank, N.A.*, 982 F.2d 813, 815 (2d Cir. 1992).  "The letter of credit therefore operates 'to substitute the credit of the issuer,' typically a bank, 'for the credit of [the beneficiary's] customer.'"  *Milky Whey*, 728 F. Supp. 3d at 312 (quoting *Bank of Cochin*, 612 F. Supp. at 1537).  The Agreement does not substitute the credit of any party for any other party, and is not an irrevocable promise to pay upon the presentation of certain documents. It is simply a commercial contract.  *See Alaska Textile*, 982 F.2d at 815 (distinguishing letters of credit from underlying commercial contracts).

## III.    Additional Arguments

Defendants argue that the Complaint must be dismissed in its entirety for two additional reasons.  First, Defendants argue that the FDIC must be joined as a necessary party, Dkt. No. 5 at 9–10.  Joinder of necessary parties in Federal Court is governed by Rule 19, which states that a party is necessary if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or
>
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
>
> > (i) as a practical matter impair or impede the person's ability to protect that interest or
> >
> > (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

The involvement of the FDIC in this controversy is not clear.  The FDIC is receiver for Signature Bank, which was supposed to guarantee the Deposit Account Control Agreement.[14] Dkt. No. 1-1 ¶ 15 n.1.  However, Plaintiff states that Signature Bank did not guarantee the Deposit Account Control Agreement.  Dkt. No. 1-1 ¶ 17.  Taken as true, these allegations establish that the FDIC would not be liable as guarantor.  Plaintiff states that it "reserves the right to amend this action" to name the FDIC as a defendant "due to its actions that lead to the failure of its financial institution, which has been expressed as a rationale for NextBank's nonperformance," and that it is pursuing an administrative claim against the FDIC for that reason.  Dkt. No. 1-1 ¶ 5.

---

[14] The Complaint does not explain what Deposit Account Control Agreement is being referenced and how it is significant to this litigation. Dkt. No. 1-1 ¶ 15.

In any case, these allegations do not provide cause to join the FDIC as a necessary party. Assuming Plaintiff has a claim against the FDIC for the FDIC causing Signature Bank to fail and/or failing to guarantee the Deposit Account Control Agreement, that is separate from the issue presented here of whether NextBank performed under the contract.  Each claim may proceed without any risk of "inconsistent obligations" or inability to "accord complete relief" in this action.  Fed. R. Civ. P. 19(a)(1), (2)(ii).  Defendants have not explained how the FDIC's absence would impede its ability to protect its interests.  *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385–88 (2d Cir. 2006).

Defendants' final argument is that the case should be dismissed because Plaintiff's claims have insufficient value under New York General Obligations Law § 5-1402.  Dkt. No. 5 at 10–11.  This is wrong for multiple reasons.  General Obligations Law § 5-1402 requires a forum-selection clause choosing New York law to be enforced when a contract, "contingent or otherwise," is "in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate, not less than one million dollars."  N.Y. Gen. Obl. L. § 5-1402(1). The statute is intended to allow parties who engage in significant commercial transactions to "select New York law to govern their contractual relationship and to avail themselves of New York courts despite lacking New York contacts."  *IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*, 982 N.E.2d 609, 612 (N.Y. 2012).  By requiring New York courts to accept such contractual disputes and apply New York law without undertaking a conflict-of-laws analysis, the New York Legislature sought to "promote and preserve New York's status as a commercial center and to maintain predictability for the parties."  *Id.*

Consistent with this purpose, the statute does not prevent the enforcement of forum selection clauses in any situation—it simply mandates their enforcement in transactions of over a

million dollars.  Subsection two of the statute expressly states that "[n]othing contained in this section shall be construed to affect the enforcement of any provision respecting choice of forum in any other contract, agreement or undertaking."  *See* N.Y. Gen. Oblig. L. § 5-1402(2); *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 391 n.13 (S.D.N.Y. 2006) ("Section 5–1402 is not a limitation on the use and effectiveness of forum selection clauses." (citation omitted)).  In addition, although Defendants suggest the statute applies to the value of Plaintiff's claim, it in fact applies to the value of the "transaction," "contingent or otherwise."  N.Y. Gen. Oblig. L. § 5-1402(1); *see IRB-Brasil*, 982 N.E.2d at 612 ("Section 5-1402(1) opened New York courts up to parties who . . . engaged in a transaction involving $1 million or more.").  Here, the Agreement relates to a loan of as much as $100 million dollars, and therefore the statute provides that the parties' choice of New York must be enforced.  Dkt. No. 5-1 at 35.  General Obligations Law § 5-1402 does not impair the Court's ability to exercise jurisdiction over NextBank, but in fact favors the exercise of such jurisdiction.

Finally, even if state law did somehow render the forum selection clause unenforceable, the enforceability of a forum selection clause in federal court is governed by federal law, not state law.  *See Martinez*, 740 F.3d at 217–22.  Therefore, it is not clear that a state law provision could overcome the "strong federal public policy" in "presumptive enforceability of forum selection clauses" that have not been shown to be unjust or unreasonable.  *Id.* at 218–19.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.  Defendant NextPlay is dismissed from the case, and the motion to dismiss is granted as to Plaintiff's second, third, and fourth causes of action.  Defendants' motion to dismiss is denied as to Plaintiff's first cause of action for breach of contract against Defendant NextBank.

The Clerk of Court is respectfully directed to close Dkt. No. 4.

SO ORDERED.

Dated: February 7, 2025
     New York, New York

                                          LEWIS J. LIMAN
                              United States District Judge